JODI LINKER
Federal Public Defender
Northern District of California
JERROD THOMPSON-HICKS
Assistant Federal Public Defender
8th Floor - Suite 820
55 South Market Street
San Jose, CA 95113
Telephone:   (408) 291-7753
Facsimile:   (408) 291-7399
Email:       jerrod_thompson@fd.org

Counsel for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 23-375 WHA |
| Plaintiff, | NO. CR 23-406 WHA |
| v. | NO. CR 23-430 WHA |
| OLVAN NAVARRO, MARCO DIAZ-CRUZ, AND DAVID ESCOTO-CANACAS, | **REPLY ON DEFENDANT'S MOTION FOR REASSIGNMENT** |
| Defendants. | **[MOTION REFERRED TO HON. VINCE CHHABRIA]** |

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.   The District Court's Oral and Written Statements Reflect Prejudgment, Reliance on Stereotypes, and Advocacy for Particular Outcomes, Thereby Undermining Due Process and Separation of Powers, and Creating an Appearance of Bias under §§ 455 and 144 ................... 2

II.  Reassignment is Warranted because the District Court Violated Rule 11 and Undermined Separation of Powers ........................................................................................ 14

CONCLUSION ........................................................................................................... 15

i

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

*Berger v. United States*,
4
    255 U.S. 22 (1921) ................................................................. 8, 11

5

*Caperton v. A.T. Massey Coal Co., Inc.*,
    556 U.S. 868 (2009) ............................................................... 2, 10

6

*Clemens v. U.S. Dist. Ct. for Cent. Dist. of Cal.*,
7
    428 F.3d 1175 (9th Cir. 2005) ................................................ 13

8

*In re Murchison*,
    349 U.S. 133 (1955) ............................................................... 3

9

10

*In re Vasquez-Ramirez*,
    443 F.3d 692 (9th Cir. 2006) .................................................. 15

11

*Liteky v. United States*,
12
    510 U.S. 540 (1994) ........................................................ 3, 11, 13

13

*Preston v. United States*,
    923 F.3d 731 (9th Cir. 1991) .................................................. 2

14

*United States v. Allen*,
15
    675 F.2d 1373 (9th Cir. 1980) ................................................ 10, 11

16

*United States v. Bergrin*,
    682 F.3d 261 (3d Cir. 2012) ................................................... 3, 8

17

18

*United States v. Bruce*,
    976 F.2d 552 (9th Cir. 1992) .................................................. 14

19

*United States v. Carey*,
20
    929 F.3d 1092 (9th Cir. 2019) ................................................ 2, 12

21

*United States v. Conforte*,
    624 F.2d 869 (9th Cir. 1980) .................................................. 10

22

*United States v. Holland*,
23
    519 F.3d 909 (9th Cir. 2008) .................................................. 3

24

*United States v. King*,
    985 F.3d 702 (9th Cir. 2021) .................................................. 14

25

*United States v. Kyle*,
26
    734 F.3d 956 (9th Cir. 2013) .................................................. 14, 15

27

*United States v. Odachyan*,
    749 F.3d 798 (9th Cir. 2014) .................................................. 13

28

*Withrow v. Larkin*,
  421 U.S. 35 (1975) ............................................................................ 13

**FEDERAL STATUTES**

8 U.S.C. § 1326 ........................................................................ 4, 5, 6, 15

28 U.S.C. § 144 ............................................................................. 1, 2, 8

28 U.S.C. § 455 ............................................................................. 1, 2, 8

**OTHER**

Model Code of Judicial Conduct r.2.9(C) (Am. Bar Ass'n 2014) ................. 12, 13

**INTRODUCTION**

Now pending before the Court is the defense's motion to reassign this matter to another district court judge under the Due Process Clause, 28 U.S.C. §§ 144 and 455, Fed. R. Crim. P. 11, and principles of separation of powers.  This motion is brought on the basis of Judge Alsup's extensive comments, written memoranda, and extrajudicial research regarding the local U.S. Attorney's Office's expedited-resolution program for fentanyl sales cases, and regarding defendants charged with fentanyl sales.  The government has filed an opposition. On January 23, 2024, Judge Alsup filed an order declining to recuse himself, but referring the motion to the Clerk of the Court for reassignment, entitled "Statement re Motions for Recusal and Referral to Another District Judge for Decision." No. CR 23-375 WHA, Dkt. 44; CR 23-406 WHA, Dkt. 27; CR 23-430 WHA, Dkt. 25.

In the motion, the defense argued in part that Judge Alsup's statements reflect prejudgment and bias; constitute preemptive comment on the type of plea agreement the court would accept; and demonstrate that the court relied on extra-record public information to advocate for more aggressive prosecutorial goals for the local U.S. Attorney's Office in fentanyl sales cases. In support, the defense cited and included Judge Alsup's statements at hearings on November 28, 2023, and December 12, 2023, and his order issued on December 19, 2023 in *U.S. v. Banegas*, No. CR 23-334 (WHA). In that order, entitled "On Rejection of Rule 11(c)(1)(C) Pleas in Fentanyl Dealer Cases," Judge Alsup provided extensive citations to his extra-record research, and further developed his position.[1]

The government's opposition does not address or even acknowledge the vast majority of Judge Alsup's written orders and statements from the bench, and minimizes or mischaracterizes the comments that it does address. In a short and somewhat boilerplate filing, the government generally argues that Judge Alsup's "views on fentanyl dealing" and "views regarding a specific sentencing position proffered by the parties" "do not indicate that recusal would be proper" under §§ 144 and 455, and are not sufficiently "extreme" to justify recusal under the Due Process Clause.  Gov. Opp. at

---

[1] In light of the overlap between the facts and law for purposes of this reply, the defense has prepared a single reply brief to be filed on behalf of Mr. Navarro, Mr. Escoto Canacas, and Mr. Diaz-Cruz. For ease of reference, the defense will generally refer to the exhibits by the date when the event occurred, or when the order was filed.  The defense notes that the transcript for the Nov. 28, 2023, hearing has an incorrect date (Nov. 29) on the cover page.

3-6. The government also argues, without quotations from the record, that the court's comments did not "impermissibly suggest what specific terms of an agreement would be acceptable to it," and thus did not violate Rule 11.  Gov't Opp. at 2.  The government is not correct.

Similarly, Judge Alsup's January 23, 2024, order does not specifically address the bulk of his comments, and, like the government, does not address his comments regarding prosecutorial discretion.  In that order, Judge Alsup states that his comments about the fast-track program were "made in the role of a judicial officer . . . ruling on Rule 11(c)(1)(C) plea agreements or motions for release," and were "fair comments on the issue of deterrence."  Jan. 23, 2024 Order at 2-3.  Judge Alsup further stated that his comments "show no bias against any individual but reflect a considered opinion on a class of crime and the need to deter it." *Id*. at 3.  Judge Alsup also notes that all the comments were made in the course of judicial proceedings, and that even hostility to a party may be insufficient grounds for recusal. *Id*. Regarding his extrajudicial research, Judge Alsup states that judges need not live as moles, blind to the world around them. *Id*. at 3. Judge Alsup then discusses the grounds supporting the court's order issued on October 23, 2023, in *U.S. v. Banegas*, entitled "Memorandum Opinion re Guilty Pleas Involving Fentanyl Sales," No. 23-CR-334 (WHA), Dkt. 23, Exh. C.  Finally, the court discusses two factual issues pertaining to the bail hearing involving defendant Olvan Navarro. *Id*. at 5-6.

The motion for reassignment has now been referred to this Court for decision.  For the reasons outlined in the defense's motion, and as set forth below, this Court should grant the motion.

## ARGUMENT

**I.    The District Court's Oral and Written Statements Reflect Prejudgment, Reliance on Stereotypes, and Advocacy for Particular Outcomes, Thereby Undermining Due Process and Separation of Powers, and Creating an Appearance of Bias under §§ 455 and 144**

The standard for determining whether reassignment is required on either constitutional or statutory grounds is objective, and calls for an assessment of whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might be questioned.  *Preston v. United States*, 923 F.3d 731, 734 (9th Cir. 1991) (§§ 144 and 455); *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 886 (2009) (due process); *see also United States v. Carey*, 929 F.3d 1092, 1104 (9th Cir. 2019) ("recusal is appropriate where a reasonable person with knowledge of all the

facts would conclude that the judge's impartiality might reasonably be questioned") (brackets and quotation marks omitted). Reassignment is also warranted where the judge expresses views that overstep the court's role as a neutral arbiter, and involve the court in the accusatory process. *United States v. Bergrin*, 682 F.3d 261, 284 (3d Cir. 2012); *In re Murchison*, 349 U.S. 133, 134-37 (1955).

As outlined in the defense motion, impartiality must be evaluated objectively because "what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994). This is a "stringent rule" that "may sometimes bar trial by judges who have no actual bias," because "justice must satisfy the appearance of justice." *In re Murchison*, 349 U.S. at 136 (quotation marks omitted). "If it is a close case, the balance tips in favor of recusal." *United States v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008).

The statements at issue concern the fast-track program developed by the local USAO for street-level fentanyl dealers, and the defendants charged with that offense. As stated by Judge Alsup in his January 23 order, the fast-track program offers "quick plea deals of credit for time served (usually a matter of days) and referral to ICE for undocumented defendants." Jan. 23, 2024, Order at 1. Judge Alsup also explains that the fast-track program anticipates that the judge will dispense with a PSR, depart from the guidelines "all the way down to zero," and immediately place the defendant on supervised release, "with the undocumented being sent to ICE." *Id.*[2]

At the December 12 hearing in Mr. Diaz-Cruz's case, the AUSA engaged in an extensive discussion of the program with Judge Alsup. As he outlined, the defendants being offered fast-track resolutions would not normally be prosecuted in federal court:

> [T]hose are not the kind of dealers that the federal government has gone after in the past, nor does it meet our intake guidelines for a traditional federal case. We are doing this case and many others because of the impact that these fentanyl dealers are having on this community. And we want them out of this area; we want them to have felony convictions; and we want them to know that if they ever come back, then they're in big trouble; and we want to do it speedily and do it in a way that takes weeks and not months, if not years, before it's done.

---

[2] The general parameters of the program also include an agreement by the defense not to file pretrial motions; a plea to a felony drug trafficking offense (which is an aggravated felony for immigration purposes); waiver of a PSR; imposition of a time-served sentence; consent to deportation; and a stay-away order from the Tenderloin during supervised release.

Transcript (Dec. 12, 2023) at 21.

The prosecutor further explained the long-term goals of the program: after the expedited federal case is completed, the defendant will be deported with a felony conviction, and if he returns, he will be prosecuted for the serious federal crime of illegal reentry, in violation of 8 U.S.C. § 1326. At that point, he will have a predicate drug felony, which will increase his guideline range. *Id*. at 16.

The prosecutor also defended his office's exercise of prosecutorial discretion in developing the fast-track program: "I can tell you that we've exercised our judgment in terms of how we screen these cases and why we're doing what we're doing in order to try and alleviate what is a severe problem in the Tenderloin." *Id*. at 4. Additionally, the parties explained that the fast-track program is only being offered to defendants that meet specified criteria:

> MR. THOMPSON-HICKS: There is a vetting process. There have been many arrests in the Tenderloin. Not all of those defendants have received the benefit of fast-track. And so there is some determination about the types of people who come before this Court on a fast-track agreement.

*Id*. at 11.

The prosecutor also outlined the resources being devoted to this program:

> We've got every lawyer in this Office that is doing these cases, and we are committing those resources. We have DEA resources. We have FBI resources. We have SFPD resources. We're all working together to try and make it so that people understand if you do this, especially in the Tenderloin, you're going to be held accountable.

*Id*. at 10.

At the December 12 hearing, and in his December 19 order, Judge Alsup repeatedly lambasted the local prosecutor's explanation of the Executive Branch's rationale behind that policy, making clear that he opposes both the short- and long-term goals of the fast-track program, and advocating strongly for prison sentences in every case:

● "There is no justice for a no prison time. This sentence is ridiculous." Transcript (Dec. 12, 2023) at 5.

● "Sending them to ICE and back – a free trip home to Honduras is not – that's going to deter fentanyl dealing? . . . It's an open invitation." *Id*. at 6.

● "I'm not going to be part of an extremely-soft-on-crime approach." *Id*. at 16.

1     ● "Your office is the lowest charging office in the United States." *Id*. at 21.

2     ● "So what are these resources being saved for?" *Id*.

3     ● "No prison time. Zero. No prison time for selling fentanyl. Let's make that big headline. San

4     Francisco: No prison time for selling fentanyl." *Id*. at 26.

5     Judge Alsup also challenged the exercise of prosecutorial discretion in not seeking prison

6     sentences as a deterrent:

> MR. BORNSTEIN: Your Honor, with all respect, I have – I have put people in prison for multiple decades, and it has not deterred them from –
>
> THE COURT: Yes, it has. I've seen plenty of cases where it's worked.
>
> MR. BORNSTEIN: And I've seen --
>
> THE COURT: You're wrong about that. That's just you talking as a lawyer. I'm telling you, as a judge for 25 years, prison works.
>
> MR. BORNSTEIN: It works in some cases, I agree.
>
> THE COURT: Why do we have the system, then? Why don't we just give up altogether and let the criminals take over like they already have in San Francisco?

*Id*. at 7-8.

Judge Alsup also ridiculed the prosecutor's explanation that the deportation would serve a deterrent benefit: "If you do this, especially in the Tenderloin, you will get a free trip home and no prison time. That is an open invitation to these people to come here and sell drugs." *Id*. at 10. The prosecutor repeatedly attempted to counter Judge Alsup's comments, but the court repeatedly and vehemently disagreed, at times injecting stereotypes, at times mocking, chastising, and baiting the prosecutor, and noting that the USAO had not complied with his earlier insistence to locate victims:

> MR. BORNSTEIN: These guys are – these will be an aggravated felony. He will be convicted of that. He will have a – he will have a penalty hanging over his head if he comes back to this country.
>
> THE COURT: If. But he ought to have a penalty now, not if-he-does-it-again type penalty. No. Look, you were – this is a very serious problem that the history books are going to write about how the criminal justice system dealt with it.
>
> I am convinced that prison time and strong measures are necessary to deal with the fentanyl crisis. It's killing people. Two people a day in San Francisco; two people, within a few blocks of this building probably. Two people a day are dying on account of drugs that he would have –

1    if he weren't in custody now, he'd be out there selling.

2    Have you done anything to find the victims that he sold to? No, no. Your office is not helping

3    me on that.

4    *Id*. at 14.

5    THE COURT:  It's beneath Jeff Bornstein to do a small-time case like this. He's waiting for the

6    big case, which we're all waiting, dying to see come down the pike but it hasn't come. We've

     been waiting for years. I've been here 25 years, waiting for those big cases to come down the

7    pike, and I haven't seen them.

8    *Id*. at 24.

9    THE COURT: Congress made it a crime to do what he did, to sell fentanyl. Congress made it --

10   I would like to see Jeff Bornstein in front of the committee and Congress, saying: Oh, Mr.
     Congressman, you did make it a crime, but we don't prosecute it in San Francisco.

11   MR. BORNSTEIN: We're prosecuting it if you let us. We're prosecuting it.

12   THE COURT: Well, then I'm happy to give you a jury trial if that's what you want to do.

13   *Id*. at 24-25.

14       Finally, Judge Alsup also made clear that he will not approve dismissal of any fast-track case

15   unless the government demonstrates that AG Garland is aware of the dismissal. *See, e.g.*, Transcript

16   (Dec. 12, 2023) at 6 ("I will not dismiss the case until the Attorney General tells me he knows about

17   this program and he knows how it is being applied in this district to let fentanyl dealers off the hook.").

18       Shortly after the December 12 hearing, Judge Alsup issued an order on December 19, 2023, in

19   which he cited extensive extrajudicial research in support of his position.  *See* Order, 12/19/23, "On

20   Rejection of Rule 11 (c)(1)(C) Pleas in Fentanyl Dealer Cases."  In that order, he listed no fewer than

21   nine extrajudicial sources documenting the Attorney General's public statements; President Biden's

22   public statements; and the current state of the fentanyl crisis in San Francisco, including:

23       ● Attorney General Merrick Garland, *Remarks at Justice Department News Conference on*

24   *Drug Trafficking Indictments* (Oct. 3, 2023) (https://www.justice.gov/opa/pr/justice-department-

25   announces-charges-against-china-based- chemical-manufacturing-companies).

26       ● Press Release, United States Department of Justice, *Justice Department Announces Charges*

27   *Against China-Based Chemical Manufacturing Companies and Arrests of Executives in Fentanyl*

28   *Manufacturing* (June 23, 2023).

REPLY TO GOVERNMENT'S OPPOSITION
CR 23-375 WHA; CR 23-406 WHA; CR 23-430 WHA

1      ● President Biden, *Remarks to National and Homeland Security Meeting to Combat Illicit*

2      *Fentanyl into the United States* (Nov. 21, 2023) (https://www.youtube.com/watch?v=CK_FzE_SoTg)

3      (last accessed Dec. 18, 2023).

4            ● Garland, *Remarks at Justice Department News Conference* (Oct. 3, 2023).

5            ● Attorney General Merrick Garland, *Remarks at U.S.-Mexico High-Level Security Dialogue*

6      *Joint Press Availability* (Oct. 5, 2023).

7            ● 60 Minutes, *Attorney General Merrick Garland on Addressing Fentanyl Crisis*

8      (https://www.youtube.com/watch?v=gTV483CUILs) (last accessed Dec. 18, 2023).

9            ● Office of the City Administrator, *Report on 2023 Accidental Overdose Deaths* (Dec. 14,

10     2023).

11           ● Attorney General Merrick Garland, *Remarks at the DEA Family Summit*, Arlington, VA

12     (September 26, 2023).

13     Order, Dec. 19, 2023, at 1-7.

14           In reliance on these sources, Judge Alsup noted that "the seriousness of the offense has been

15     laid out by the Attorney General and President Biden," and "Fentanyl is Public Enemy Number One,

16     at every level." *Id*. at 4.  Judge Alsup also expressed his view that the time-served resolution "sends

17     exactly the wrong message. It's an open invitation to come to San Francisco to sell fentanyl." *Id*. at

18     5. The proper message, in view of Judge Alsup, should be: "if you come to sell fentanyl in San

19     Francisco, you will go to prison (and then be deported)." *Id.* at 5. On that basis, Judge Alsup cited

20     AG Garland's public statements regarding the fentanyl crisis and asserting that "if every level in the

21     chain of distribution is to be brought to justice, as called for by our Attorney General, street-level

22     dealers must also be prosecuted and go to prison." *Id*. at 5. Judge Alsup further characterized the

23     local USAO's position as deeming street-level dealers as "unworthy of the time of federal

24     prosecutors," which Judge Alsup disputed because "those are the very hands placing lethal doses in

25     the hands of victims." *Id*. While it may be difficult to trace individual deaths to individual

26     defendants, he argued, "it is not hard to trace most of the 700 deaths in San Francisco this year as a

27     group back to the Tenderloin vendors as a group." *Id*. at 5.  Again citing the Attorney General's

28     public statements, Judge Alsup states that "[r]efusing to seek prison time for 'Fast Track' fentanyl

dealers is an egregious error. Migrants deserve our sympathy in other contexts, but when they sell fentanyl they deserve to go to prison like everyone else." *Id*. at 6. Judge Alsup also reiterated his requirement that the local USAO inform him regarding AG Garland's awareness of the program. *Id*. at 7 ("Before I will rule on any more motions to dismiss, the government will please show that our local office has discussed the concerns in this memorandum with the Attorney General (or the Assistant Attorney General for the Criminal Division.").

Here, as the record plainly demonstrates, Judge Alsup has (1) expressed strong policy disagreements with the government's fast-track program for fentanyl cases; (2) insisted upon prison time and advocated for jury trials in such cases; (3) argued that the enforcement priorities and allocation of resources by the local U.S. Attorney's Office are not aligned with the priorities expressed publicly by Attorney General Merrick Garland; (4) insisted upon receiving generalized victim-impact information in all cases; and (5) ordered the government to clear dismissals with AG Garland, and to advise the court regarding AG Garland's awareness and approval of the local expedited-resolution program. Transcript (Nov. 28, 2023); Transcript (Dec. 12, 2023). Judge Alsup has also made comments that reflect stereotyping and prejudgment regarding the presumed guilt of defendants charged with fentanyl sales, and regarding their presumed inability to comply with conditions of release.  Transcript (Nov. 28, 2023) at 6-14. On this record, reassignment is warranted. *See, e.g., Bergrin*, 682 F.3d at 284 (ordering reassignment based on district court's views regarding perceived unfairness of RICO charging procedure).

In its opposition, the government does not dispute that the standard for reassignment depends on the appearance of bias. Nor does the government dispute that in close cases, under §§ 455 and 144, reassignment should be granted. The government's limited discussion of the record primarily pertains to Judge Alsup's statements regarding his refusal to impose time-served sentences, which the government has minimized and mischaracterized.  *See supra* p.1. In the government's framing, the court was "skeptical that a time-served sentence . . . is generally sufficient to deter a convicted fentanyl dealer from reoffending." Gov. Opp. at 4.  But Judge Alsup's statements have gone far beyond expressing skepticism regarding the deterrent effect of a time-served sentence. Judge Alsup has clearly and repeatedly stated that he will not impose a time-served sentence in any fentanyl sales

case, calling such a sentence "ridiculous."  Transcript (Dec. 12, 2023) at 5.

The government does not specifically address the defense's argument that Judge Alsup's statements at Olvan Navarro's bond hearing reflect prejudgment, apart from an oblique footnote stating that the court was addressing criminal history information that was public.  Gov. Opp. to Def. Navarro's Mtn. at 2 n.1.  The Court should accordingly find the evidence of prejudgment unrebutted, which here arises from, *inter alia*, Judge Alsup's wholesale rejection of unsecured bonds in federal district court ("that's worthless," Transcript, Nov. 28, 2023, at 8), his view that defendants with prior charges arising in San Francisco and Alameda Counties are guilty even where their cases were dismissed for lack of evidence, (e.g., "It's a mystery to me what has gone wrong with our system that criminals are not prosecuted," *id*. at 14), and his repeated assertions that "fentanyl dealers" will not comply with release conditions ("they don't abide by the conditions," *id*. at 14).

The government also fails to address the defense's argument that Judge Alsup relied on extra-record public information to advocate for more aggressive prosecutorial goals for the local U.S. Attorney's Office in fentanyl sales cases. Def. Mtn. at 5, 15.  In so doing, Judge Alsup also overstepped the role of a neutral arbiter, and adopted an advocacy role that has impermissibly blurred the lines between the court and the prosecutor, including by insisting that the government address community-wide victim impact in its sentencing memos, and advise Judge Alsup regarding whether AG Merrick Garland approves of any decision to seek dismissal of a charged case.

In Judge Alsup's January 23, 2024, "Statement re Motions for Recusal and Referral to Another District Judge for Decision," Judge Alsup states that he is "not biased against any individual defendant." Order, Jan. 23, 2024, at 2.  Similarly, the government argues that the defendant has not squarely raised an allegation that Judge Alsup is biased or prejudiced against him specifically. Gov. Opp. at 4.  But as noted above, reassignment may be warranted regardless of the existence of actual bias. And Judge Alsup has expressed bias and prejudice against defendants charged with fentanyl sales by relying on stereotypes regarding how "fentanyl dealers" behave, and by stating that "fentanyl dealers" would not comply with any conditions of release.  With respect to Mr. Navarro specifically, Judge Alsup also expressed the view that he was guilty in his two prior dismissed cases, even though they were dismissed for lack of evidence. In any event, this Court need not find that Judge Alsup is

1    actually biased in order to determine that reassignment is warranted.  *Caperton*, 556 U.S. at 886;

2    *United States v. Conforte*, 624 F.2d 869, 881 (9th Cir. 1980).  The issue presented is whether the

3    comments give rise to an appearance of bias and prejudice, and they most certainly do.

4         Judge Alsup also states that his "considered views on the seriousness of the fentanyl crisis," are

5    "not enough for recusal." Order, Jan. 23, 2024, at 2.  But Judge Alsup's comments have gone far

6    beyond the mere expression of "considered views."  While Judge Alsup disagrees with the defense's

7    assertion that he intends to follow "distinct requirements" in any case before him, stating that he will

8    follow "normal procedure," *id*., the fact remains that he will not follow the conditions that the USAO

9    has set for the cases within the fast-track program, but will instead follow his own requirements, to

10   include (1) requiring a PSR[3]; (2) instructing the government to include generalized information

11   regarding victim impact in the government's sentencing memorandum, *see* Order, Oct. 23, 2023, at 4;

12   (3) instructing the government to address the likelihood that the defendant will actually be deported,

13   *id*. at 5; (4) imposing a prison sentence, likely within the guideline range, Transcript, Nov. 28, 2023,

14   at 15; and (5) requiring the local USAO to demonstrate that AG Garland has approved dismissal in

15   cases where the government moves to dismiss after filing, *see* Order, Dec. 19, 2023,  at 7.

16        Both Judge Alsup and the government have cited *United States v. Allen*, 675 F.2d 1373, 1385

17   (9th Cir. 1980), with the government arguing that *Allen* is "dispositive."  Gov. Opp. at 4. Quite to the

18   contrary, the judge in *Allen* made only one comment during sentencing, that "importing marijuana

19   was a very serious crime that had a 'cancer'-like effect on society." *Allen*, 675 F.2d at 1385. The

20   Ninth Circuit described the comment as "an innocuous and unexceptionable paraphrase of

21   congressional sentiment in passing the criminal statutes in question."  *Id*.  Here, by contrast, Judge

22   Alsup's extensive comments cannot be characterized as "innocuous" or "unexceptionable."

23        Judge Alsup also notes that in *Allen*, the Ninth Circuit stated that the judge's "cancer-like"

24   comment was "nowhere near the sort of apparent ethnic, political, or personal animus" demonstrated

25   in cases where the judge expressed bias or prejudice against German Americans and Communists.

26

27   —————————————

28   [3] Requesting a PSR in a fast-track case is not, in itself, evidence of an appearance of bias warranting recusal, and the defense did not so argue.

1    Order, Jan. 23, 2024, at 2.  The government makes the same comparison, citing the judge's statement

2    in *Berger v. United States*, 255 U.S. 22, 28 (1921), that German-Americans were "reeking with

3    disloyalty" to the United States.  Gov. Opp. at 4 (citing *Liteky*, 510 U.S. at 550). But neither Judge

4    Alsup nor the government specifically distinguish Judge Alsup's sweeping characterizations here,

5    which are similarly extreme. Indeed, the vast majority of the court's comments – including statements

6    relying on stereotypes and a presumption of guilt regarding defendants charged with fentanyl dealing;

7    statements advocating prison sentences in all such cases based on extensive extrajudicial research;

8    and statements chastising and exhorting the local USAO to exercise prosecutorial discretion more

9    aggressively – easily qualify under *Liteky*'s framework as "wrongful or inappropriate, either because

10   it is undeserved, or because it rests upon knowledge that the subject ought not to possess . . . , or

11   because it is excessive in degree." *Liteky*, 510 U.S. at 550 (cited in Gov. Opp. at 3).

12          Contrary to Judge Alsup's assertion, *see* Jan. 23 Order at 2-3, his personal and policy

13   disagreements with the USAO's exercise of prosecutorial discretion in fentanyl cases are not "fair

14   comments on the sentencing issue of deterrence," but have crossed the line to reflect direct advocacy

15   regarding the policy choices of the local USAO in prosecuting fentanyl sales cases in San Francisco,

16   based on extensive extra-judicial research, and undermine due process as well as the separation of

17   powers.  And that extrajudicial research itself provides further grounds for reassignment.  As the

18   Ninth Circuit observed in *Carey*, in a passage cited by Judge Alsup, it is certainly true that judges

19   must be allowed to "perceive[e] the illuminated world" in which they live, and need not "live as

20   moles." *Carey*, 929 F.3d at 1105. It is also true that because judges reside "[i]n our modern,

21   interconnected, endlessly broadcast world, complete blinders are impracticable," and "outside

22   knowledge alone does not on its own prejudice judicial proceedings." *Id.* at 1105. However, the Ninth

23   Circuit in *Carey* concluded its analysis with an express admonishment that a judicial officer must not

24   intentionally review or rely upon extrajudicial material. *Id*. at 1106.  Judge Alsup's comments here go

25   far beyond demonstrating that he perceives the illuminated world, and his extrajudicial research far

26   exceeds that conducted in *Carey*.

27          The issue in *Carey* was the judge's reading of a single newspaper article about a defendant's

28   alleged criminal conduct while charges against the defendant were then pending before him, and then

1    citing the article in passing when finding the defendant guilty following a bench trial.  *Id*. at 1105.

2    The Ninth Circuit stated that a reasonable person would not have questioned the judge's impartiality

3    based solely on one reference to the article that "had no other apparent impact on the verdict." *Id*. at

4    1105-06.  However, the court "caution[ed] judicial officers against similar uses of extrajudicial

5    material," and "admonish[ed]" the judge who had presided over the bench trial "to be more

6    circumspect in referencing or considering facts not properly admitted into evidence." *Id*. *Carey* also

7    emphasized the restrictions on independent research placed on judges by the American Bar

8    Association, including that "A judge shall not investigate facts in a matter independently, and shall

9    consider only the evidence presented and any facts that may properly be judicially noticed."  *Id*. at

10   1106 (citing Model Code of Judicial Conduct r.2.9(C) (Am. Bar Ass'n 2014). And the Ninth Circuit

11   noted that under the Ninth Circuit Model Instructions, in cases where the judge serves as the trier of

12   fact, the judge is directed "not to read, watch, or listen to any news or media accounts or commentary

13   about the case or anything to do with it," and if they do "happen to read or hear anything touching on

14   [the] case in the media," they must "turn away and report it . . . as soon as possible." *Id*.

15          Unlike *Carey*, the district judge here did not merely reference a single article, without any

16   indication that he had relied on it in forming his opinion.  Instead, the district court judge conducted

17   extensive extrajudicial research and relied extensively on that material to justify his own policy and

18   advocacy viewpoints, and to support his attacks on the local USAO's exercise of prosecutorial

19   discretion.  This conduct is all the more reason for reassignment under *Carey*, given that the judge

20   would act as the finder of fact when determining whether to accept a plea or fashioning the

21   appropriate sentence. *Id*.

22          In his January 23 order, Judge Alsup also notes that the standard for recusal will not ordinarily

23   be met based on comments made during the course of judicial proceedings in the instant case.  Order,

24   Jan. 23, 2024, at 3.  The defense addressed the same principle in its motion. But as *Liteky* recognized,

25   even when remarks are limited to the case involving the party bringing the motion, they may be

26   sufficiently serious and pervasive to "reveal such a high degree of favoritism or antagonism as to

27   make fair judgment impossible." *Liteky*, 510 U.S. at 554. That standard would be met here, if it

28   applies, but the record also demonstrates that the remarks have not been limited to one case, or to one

1   defendant. Instead, the comments have been made in a wide range of cases regarding multiple

2   defendants, and pertain to the general approach of the entire U.S. Attorney's Office in prosecuting

3   street-level fentanyl cases.

4        In his January 23 order, Judge Alsup cites *Clemens*, which identified several categories of

5   comments that are not ordinarily sufficient to require recusal, including comments evincing "a

6   dedication to upholding the law or a determination to impose severe punishment within the limits of

7   the law upon those found guilty of a particular offense." *Clemens v. U.S. Dist. Ct. for Cent. Dist. of*

8   *Cal.*, 428 F.3d 1175, 1178-79 (9th Cir. 2005).  And it is certainly correct that hostile remarks alone

9   do not ordinarily constitute a valid basis for recusal.  Gov. Opp. at 4; Order, Jan. 23, 2024 at 3.  On a

10  related point, the government argues that under the Due Process Clause, antagonistic comments

11  require disqualification on constitutional grounds "'[o]nly in the most extreme of cases.'" Gov. Opp.

12  at 5 (quoting *United States v. Odachyan*, 749 F.3d 798, 801 (9th Cir. 2014)). But as the Supreme

13  Court has made clear, and as *Odachyan* acknowledged, that "a biased decisionmaker is

14  constitutionally unacceptable." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). Judge Alsup's statements

15  here have reached the point that they violate the defendant's right to a neutral arbiter, undermine the

16  presumption of innocence, and impinge on separation of powers, in addition to violating Rule 11, *see*

17  *infra*.  The facts of *Odachyan* are also distinguishable.  The judge there was critical of immigrants

18  who come to the United States and "prey on this government's institutions  . . . and then direct the

19  court to look at the terrible conditions from which they came," but the Ninth Circuit stated that the

20  comments were not so extreme as to characterize "all immigrants [as] criminals." *Odachyan*, 749

21  F.3d at 802.  Here, by contrast, Judge Alsup has relied on sweeping stereotypes and a presumption of

22  guilt regarding an entire category of defendants, and has expressed vehement antagonism toward the

23  leniency offered through the expedited-resolution program based in part on those stereotypes.

24       As the record demonstrates, Judge Alsup's position demonstrates an appearance of bias and

25  prejudice, and has reached a level of advocacy regarding the prosecution of street-level fentanyl

26  dealers, based on his own extensive extrajudicial research, which warrants reassignment.

27

28

## II.     Reassignment is Warranted because the District Court Violated Rule 11 and Undermined Separation of Powers

Federal Rule of Criminal Procedure 11 "admits of no exceptions." *United States v. Bruce*, 976 F.2d 552, 558 (9th Cir. 1992), *abrogated on other grounds by United States v. Davila*, 569 U.S. 597 (2013). Under Rule 11, a trial court may not preemptively "comment[] on hypothetical agreements it would or would not accept," and may not "commit[] itself to a sentence of at least a certain severity." *United States v. Kyle*, 734 F.3d 956, 963, 965 (9th Cir. 2013). Here, the district court's comments plainly violated the restrictions recognized in *Kyle*, and the government does meaningfully distinguish the cases cited by the defense in which reassignment was granted for a Rule 11 violation.

The government cites *United States v. King*, 985 F.3d 702, 712-13 (9th Cir. 2021), Gov. Opp. at 2, but *King* supports reassignment here. The Ninth Circuit observed in *King* that "commonplace interactions with defendants" related to docket management, and "legitimate questions" will not justify reassignment, *id.* at 712-13, but the district court's oral and written statements here cannot be characterized as either commonplace interactions or legitimate questions. The government also notes that when a judge rejects a plea under Rule 11(c)(1)(C), the judge must inform the parties that the if the plea is not withdrawn, the court may dispose of the case less favorably than the plea agreement contemplated, and will not violate Rule 11 by providing reasons for rejecting the plea. Gov. Opp. at 2 (citing *Kyle*, 743 F.3d at 963). At the same time, as the government acknowledges, the court cannot "'cross the line into giving an express or implied judicial imprimatur on plea terms.'" *Id*. (quoting *King*, 985 F.3d at 712-13.

The government contends that here, the district court did not "cross the line" because it "provided reasons for keeping the defendant in custody," and "did not impermissibly suggest that specific terms of an agreement would be acceptable to it." *Id*. This is both an understatement and a misstatement: as to the former, the "reasons" given were predicated on stereotypes and bias, and as to the latter, the court expressly stated that it would require a prison sentence, and probably a guideline sentence. In his January 23, 2024, order, Judge Alsup contends that his "refusal to endorse an across-the-board program cannot possibly constitute a violation of Rule 11," and is not comparable to *Kyle*. Order, Jan. 23, 2024, at 4. But the court did not simply refuse to endorse an across-the-board program, and instead conveyed, repeatedly and emphatically, that it would not

accept a time-served sentence in any case, and would impose prison in every case. *Compare Kyle,* 743 F.3d at 965; *see also, e.g., In re Vasquez-Ramirez*, 443 F.3d 692, 701 (9th Cir. 2006). Nor did the court ameliorate the Rule 11 violation, as the government seems to suggest, by attempting to goad the parties into a speedy trial. Gov. Opp. at 3 n.2; *see also* Transcript (Dec. 12, 2023) at 21, 25.

Moreover, the same principles animating Rule 11 also serve to protect a defendant's due process right to a neutral arbiter, and to preserve separation of powers between the judicial and executive branches. In light of these overarching goals, the Rule 11 analysis cannot be limited to Judge Alsup's specific comments regarding the minimum sentence he would impose.  Here, Judge Alsup also intruded into the parties' settlement discussions by ridiculing the entire fast-track program in which the defendant was seeking to participate, including the program's inclusion of a stay-away order from the Tenderloin, the program's goal of speedy deportation, and the program's threat to prosecute defendants who return illegally under § 1326.

Finally, while Judge Alsup declined to recuse himself, it is nonetheless beyond peradventure that reassignment will have the salutary effect of allowing Judge Alsup to continue his speaking, writing, and advocacy toward the goal of fostering a more aggressive approach to the prosecution of fentanyl dealers by the local U.S. Attorney's Office, an issue in which he has invested significant time and thought, and about which he has written so eloquently and at such length.  At the same time, his deeply held convictions and advocacy would no longer be brought to bear on individual defendants' cases. In light of the appearance of bias and prejudgment; in order to ensure continued separation of powers; as a remedy for the violation of Rule 11; and to protect the right of the defendant to a neutral arbiter, the matter should be reassigned.

## CONCLUSION

For the foregoing reasons, the Court should assign this matter to a different district court judge.

/ /

/ /

/ /

/ /

1   Dated:      January 31, 2024

2                                                    Respectfully submitted,

3                                                    JODI LINKER
4                                                    Federal Public Defender
                                                     Northern District of California
5
                                                     _____/S/_____
6                                                    JERROD THOMPSON-HICKS
                                                     Assistant Federal Public Defender
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28