ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JEFFREY BORNSTEIN (CABN 99358)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7289
   FAX: (415) 436-7234
   Jeffrey.bornstein@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>DAVID ESCOTO-CANACA,<br><br>   Defendant, | CASE NO. 3:23-cr-00406 WHA<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date:  August 13, 2024<br>Time:  2:00 p.m.<br>Court:  Hon. William Alsup |

### I.    OVERVIEW[1]

For the reasons set forth below, we recommend a sentence of one year plus one court day. If the Defendant remains in Santa Rita or another non-BOP facility, on the last day of his sentence, we ask that the Court order that the US Marshal take custody of the defendant and release him from US Marshal custody at 450 Golden Gate Ave directly to the custody of ICE.

---

[1] The Government is referring to the Defendant as Mr. Escoto-Canacas throughout this Memorandum since that is what he says is his true name.

1

GOV. SENTENCING MEMO FOR ESCOTO-CANACAS
3:23-cr-00406 WHA

This matter was originally presented to the Court as a FAST TRACK case for time served. The Defendant's initial C Plea was rejected by the Court, however. He has remained in custody since his arrest on October 30, 2023, and by the time he is sentenced he will have been in custody for almost 9.5 months. He pled open and there is no Plea Agreement. He is taking full responsibility for his drug dealing but his immigration history is disturbing. While he is a street dealer, because of his repeated §1326 convictions, he poses a challenge for the government and for the Court and his case would now almost certainly be evaluated differently; at this time, any resolution could include a §1326 charge in addition to the aggravated drug felony at issue in this case.

The United States agrees with Probation that some additional jail or prison time is warranted. The Government is recommending one year plus one day with the release order set forth above to ensure that if he stays in Santa Rita and is not in a BOP facility, he will still be released from US marshal custody directly to ICE.

The facts are clearly set forth in the Amended PSR dated July 10, 2024. *See* PSR ¶¶ 7–10. In sum, law enforcement officers conducting surveillance operations in the Tenderloin observed the defendant conduct at least two suspected hand-to-hand narcotics transactions between approximately 7:45 p.m. and 8:00 p.m. on October 30, 2023. *See* PSR ¶¶ 8–9. When officers moved in to arrest the defendant on suspicion of drug trafficking, he fled on foot, tossing multiple clear plastic baggies to the ground as he ran. *See* PSR ¶ 9. Officers eventually apprehended the defendant, placed him under arrest, and seized $211.80 and an iPhone—as well as indicia of drug trafficking, like a small digital scale and empty baggies—from his person. *Id.*

The plastic baggies Mr. Escoto-Canacas threw on the ground contained approximately 20 grams (gross) of suspected fentanyl, and 11.5 grams (gross) of suspected methamphetamine. *See*, PSR at ¶9. For Guideline purposes, the parties agree the defendant is accountable for possessing with intent to distribute more than 40 kilograms but less than 60 kilograms of converted drug. *See*, PSR at ¶10.

His criminal conduct is straightforward; he was dealing and possessed with intent to distribute additional small amounts of fentanyl and methamphetamine in the Tenderloin. He has some other arrests and convictions related to his criminal behavior including a P.C. § 32 accessory after the fact

conviction in 2022 in Alameda County and an earlier misdemeanor conviction for battery in Texas in 2009. *See,* PSR at ¶¶ 28, 32. More concerning are his arrests and convictions for illegal entry into the United States. He was arrested at the border initially in 2007. *See,* PSR at ¶37. He was convicted of 8 U.S.C. § 1326(a) and (b)(1) in 2011 and again in 2016. *See,* PSR at. ¶¶ 30-31. Importantly, if he returns to this country after this conviction, as an aggravated felon, with this conviction especially when coupled with a sentence of at least one year, he will be subject to increased penalties under 8 U.S.C. § 1326 (b)(2).

For these reasons, as well as those set forth in more detail below, we recommend a sentence of one year plus one court day.

## II.   PROCEDURAL HISTORY

On November 1, 2023, the government charged the defendant by Criminal Complaint with one count of possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). *See* Dkt. 1. Less than a week later, on November 7, 2023, the defendant waived his right to indictment and the government filed an Information charging him with one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). *See* Dkts. 10, 12.

The next day, in advance of what was preliminarily set as a combined change-of-plea and sentencing hearing on November 28, 2023, the parties asked the Court to order the Probation Office to prepare an expedited PSR. *See* Dkts. 11, 14. Instead, on November 13, 2023, the Court issued an Order that, among other things, (i) directed the government to confer with the Probation Office and to inform the Court when the Probation Office could prepare a "complete" PSR; (ii) required both parties to address in their sentencing memoranda various issues previously raised by the Court;[2] and (iii) required the government to provide information in its sentencing memorandum regarding a different case that it had recently dismissed.[3] *See* Dkt. 15.

---

[2] The Court raised these issues in a memorandum opinion dated October 23, 2023, in *United States v. Banegas*, No. 3:23-cr-00334 WHA (ECF No. 23). With one exception having to do with why this defendant sold drugs here, those questions are not pertinent to this defendant and this sentencing.

[3] Specifically, the Court asked the government to "set forth what became of the fentanyl information that the government previously dismissed for referral to the district attorney." Dkt. 15 at 2 (citing *United States v. Gonzalez-Gonzalez*, No. 3:23-cr-00294 WHA). The defendant in *Gonzalez-Gonzalez* against whom the government dismissed charges in Case No. 3:23-cr-00294 WHA is currently in removal proceedings and

On November 19, 2023, at the request of the parties, the Court set sentencing in this case for January 9, 2024. *See* Dkt. 17. The Court then rejected the Fast Track Plea Agreement. Mr. Escoto-Canacas later pled guilty in an "Open Plea" to the Court on March 20, 2024. Thereafter the parties met and conferred and asked Probation to correct certain information in the PSR that had been earlier produced in expectation of a Plea Agreement. The amended Presentence report and the findings in it, including as to the Sentencing Guidelines and Sentencing range, is accurate. Probation suggests a variance to 16 months, and we are asking for slightly more, down to 12 months plus one court day.

### III.  SENTENCING GUIDELINES

The parties agree that Mr. Escoto-Canacas should be held accountable for possessing for sale more than 40 but less than 60 kgs of converted drug weight**.** *See* PSR at ¶ 10. The parties also agree that Mr. Escoto-Canacas' criminal history category is IV. *See* PSR at ¶ 34.

The parties therefore agree that the applicable Guidelines range should be calculated as follows:

a. Base Offense Level, U.S.S.G. § 2D1.1(a)(5), (c)(10):                                    18
   Defendant possessed 40 – 60 kg of Converted Drug Weight

b. Acceptance of Responsibility, U.S.S.G. § 3E1.1:                                         -3

c. Adjusted Offense Level:                                                                                  15

A total offense level of 15, at Criminal History Category IV, yields a Sentencing Guidelines range of 30 to 37 months. *See*, PSR, at ¶57.; U.S.S.G. ch. 5, pt. A.

### IV.  SENTENCING RECOMMENDATION

The United States recommends a sentence of one year plus one court day. If the Defendant remains in Santa Rita or another non-BOP facility, on the last day of his sentence, we ask that the Court order that the US Marshal take custody of the defendant and release him from US Marshal custody at 450 Golden Gate Ave to the custody of ICE. The government also seeks the forfeiture of the defendant's iPhone, digital scale, and the drug proceeds ($211.80) seized during his arrest. Finally, the government requests the imposition of the mandatory, standard, and special conditions of Supervised

---

being held in detention in ICE custody at the Golden State Annex in Bakersfield, CA.

4
GOV. SENTENCING MEMO FOR ESCOTO-CANACAS
3:23-cr-00406 WHA

Release attached as Appendix A to this Memorandum.

The Court asked in its earlier order why this Defendant came to San Francisco to sell drugs. While we do not know the answer to that precise question in this case, the Presentence Report provides the Court with information explaining why the Defendant came to this country and what he was trying to do. For instance, in its sentencing recommendation, the PSR summarizes Mr. Escoto-Canacas life:

> "Mr. Escoto-Canaca was raised by his parents in poverty-stricken San Ignacio, Francisco Morazán, Honduras, where he had to stop attending school after the 2nd grade to work in the fields to help support the family. The food and water supply were limited, and the family lived in a home without electricity. Mr. Escoto-Canaca explained that he came to the United States for two reasons. First, to avoid being forced to join a gang, and he hoped of earning an income that would supply the family with the resources to build a home in Honduras."

*See,* PSR at Sentencing Recommendation Page 2. While he may have come here with good intentions, he has hurt this community and this City and deserves to be convicted, deported and subject to a stay away order that will hopefully be effective in keeping him from re-entering the Tenderloin, and in fact the United States, in the future.

Importantly, this federal prosecution is significant. He will now be an aggravated felon. That increases the length of sentence he will receive if he comes back after he is deported. The Defendant had a prior drug selling arrest in 2022 that resulted in a misdemeanor conviction. But for the federal prosecution in this case, it is likely he would have been released again and may have continued to sell drugs in the Tenderloin.[4] Since his federal arrest he has been prevented from doing so. If he violates the stay away order and comes back into the United States, he will be subject to a significant prison sentence. While w the Court has expressed concerns that a prison sentence should be imposed in all of these cases, in the exercise of prosecutorial discretion, the government is using a modified approach and so far, it is working.

The United States Attorney's Office is committed to prosecuting street level drug dealers because of the overwhelming harm being caused to the people who live in City of San Francisco, especially in the Tenderloin Neighborhood. There were over 806 fentanyl deaths in San Francisco last

---

[4] The Defendant was also arrested in 2023 in Yolo County for drug possession for sale with an arrest warrant issued on December 14, 2023, for failure to appear (when he was already in federal custody on this case). *See,* PSR at ¶36.

year. For Americans aged 18-45, the leading cause of death is fentanyl overdose. The addictive drug is responsible for nearly 70% of the United States' 107,000+ drug overdose deaths in the past year and is 50 times stronger than heroin and 100 times stronger than morphine.[5]

Federal law enforcement agents and prosecutors are doing our part to tackle the high volume of distribution cases and help this under siege community. As a result, to effectively prosecute the high volume of street level drug dealers, and deter these offenders from returning to the Tenderloin, the United States Attorney's Office has, in appropriate cases, recommended time served sentences that result in the defendant's immediate conviction, and removal from the Tenderloin, with a three-year term of supervised release. This case was charged, and the plea offer was made early in the Fast Track process. Prior §1326 convictions are now further scrutinized and may lead to additional charges and or a different offer that includes prison time as part of our Fast Track plus analysis. We are recommending additional time in this case largely because of the Defendant's repeat §1326 history.

### A. Section 3553 Factors

#### 1. Nature and Circumstances of Offense; History and Characteristics of Defendant

The defendant is a 38-year-old Honduran national. According to the Department of Homeland Security, the defendant lacks immigration status and/or is removable under U.S. immigration law. There is an immigration detainer in place such that the parties expect the defendant will be transferred to the custody of the Department of Homeland Security for removal proceedings following his release from the custody of the U.S. Marshals Service. By the time he is sentenced, the defendant will have served over nine months custody time. If the Court adopts the government's suggested sentence of 12 months plus one business day, and if it approves the suggested release order, he will be released directly from the Marshal into ICE custody, and he will almost certainly be deported thereafter.

The defendant has three prior federal convictions, all for illegal reentry, including violations of 8 U.S.C. § 1326. *See,* PSR ¶¶ 29–31 (describing convictions from 2009, 2011, and 2016). He was last deported from the United States on January 2, 2018. PSR at ¶44. Although any amount of fentanyl or methamphetamine (let alone both) is indisputably dangerous, the Guidelines range of 30–37 months is

---

[5] https://www.getsmartaboutdrugs.gov/media/dea-administrator-record-fentanyl-overdose-deaths

driven here primarily by the defendant's criminal history, not his offense level. *Id.* (describing three federal illegal reentry convictions, as noted above, and two state misdemeanor convictions from 2009 and 2022).

This raises a serious question as to why another deportation will be effective in stopping defendant's illegal conduct without a longer prison sentence. We don't know for sure, but his status after this conviction will make it significantly more likely that he will be subject to a longer period of incarceration just for entering the U.S. again.

### 2. Need for Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment; to Afford Adequate Deterrence to Criminal Conduct; and to Protect the Public from Further Crimes of the Defendant

The defendant waived detention and has been in continuous custody since his arrest. He also waived indictment, agreed promptly to plead guilty (although he at the last minute pled "open" and not via a plea agreement.[6] *See*, PSR at 14. In this case, the parties agree, on most of the important sentencing factors including the total fentanyl and methamphetamine that the defendant possessed at the time of his arrest, his criminal history, and the sentencing guideline range. The government also urges the Court to impose the special conditions of supervised release including the stay away and suspicionless search conditions, and those other mandatory and standard conditions set forth in Appendix A.

If the Court agrees with the government, the defendant will be on notice that a return to the Tenderloin (in violation of his supervised release terms) or even to any part of the United States, assuming he is deported, will invite new charges and/or supervised release violations. Any additional 8 USC § 1326 violations will be more serious than those prior instances of his criminal immigration violations because of his aggravated felony drug conviction in this case. See e.g., 8 U.S.C.§1326(a) and (b)(2) (that increases the sentence for prior re-entries where there is an intervening aggravated felony conviction as there will now be in this case). Thus, any subsequent illegal reentry into the U.S. or the

---

[6] An open plea rather than an agreed upon plea agreement is another factor that would now be taken into consideration before a Fast Track offer would be made or honored by the government.

Tenderloin, if for any reason he is not deported, will be punishable with more prison time including a Supervised Release violation enforceable over the next 3 years.

### B. The Necessity of the Proposed Special Conditions of Supervised Release

A three-year term of supervised release is required by statute for the drug-trafficking offense with which the defendant is charged. *See* 21 U.S.C. § 841(b)(1)(C). It is also essential to this disposition. In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug dealers from the Tenderloin (given the defendant has remained in custody since he was arrested) and to effect a strict stay-away from the Tenderloin for three years. Under the terms of supervised release as contemplated herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, but he will also be prohibited from entering the Tenderloin without prior approval of the Probation Office:

> Unless authorized by the United States Probation Office, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by Geary Boulevard, on the east by Powell Street and 3rd Street, and on the south by Howard Street.

Combined with a suspicionless search condition, the goals of Section 3553(a), including protection of the public and meaningful deterrence, will be significantly advanced by this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained.

The stay-away condition is also necessary given the circumstances of Tenderloin drug trafficking: defendants previously convicted of selling drugs in the Tenderloin are prone to recidivate, and they frequently return to the Tenderloin to do so, even following removal from the United States. *See, e.g., United States v. Luis Almicar Erazo-Centeno*, No. 3:23-cr-00002 CRB; *United States v. Gamez-Arguilio*, No. 3:17-cr-00553 CRB.

### V. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence the defendant to one year plus one court day, to be followed by a term of supervised release of three years, to include the special conditions of supervision including the stay-away condition from the Tenderloin

and an expanded, suspicionless search condition. If the Defendant remains in Santa Rita or another non-BOP facility, on the last day of his sentence, we ask that the Court order that the US Marshal take custody of the defendant and release him from US Marshal custody at 450 Golden Gate Ave to the custody of ICE. We submit that this sentence is sufficient but not greater than necessary to accomplish all of the § 3553 factors in this case.

DATED: July 26, 2024               Respectfully Submitted,

ISMAIL J. RAMSEY
United States Attorney

  /s/  Jeffrey Bornstein
Jeffrey Bornstein
Assistant United States Attorney

Appendix A

**MANDATORY CONDITIONS**

1) You must not commit another federal, state or local crime.

2) You must not unlawfully possess a controlled substance.

3) You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

4) You must cooperate in the collection of DNA as directed by the probation officer.

5) You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

**STANDARD CONDITIONS OF SUPERVISION**

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court, and bring about improvements in your conduct and condition.

1) You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of RELEASE, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2) After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3) You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4) You must follow the instructions of the probation officer related to the conditions of supervision.

5) You must answer truthfully the questions asked by your probation officer.

6) You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with, for example), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

7) You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by these and the special conditions of your supervision that he or she observes in plain view.

8) You must work at least part-time (defined as 20 hours per week) at a lawful type of employment unless excused from doing so by the probation officer for schooling, training, community service or other acceptable activities. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

9) You must not communicate or interact with someone you know is engaged in criminal activity. You must not associate, communicate, or interact with any person you know has been convicted of a felony, unless granted permission to do so by the probation officer.

10) If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

11) You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12) You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

If the probation officer determines that you pose a risk to a third party, the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

## SPECIAL CONDITIONS OF SUPERVISION

1) You must cooperate in the collection of DNA as directed by the probation officer.

2) You must submit your person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), or any property under your control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state or local law enforcement officer at any time with or without suspicion. Failure to submit to such a search may be grounds for revocation; you must warn any residents that the premises may be subject to searches.

3) Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by Geary Boulevard, on the east by Powell Street and 3rd Street, and on the south by Howard Street.